## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| **COLLIN GREEN,** individually and on behalf of all others similarly situated, | Case No. 2:14-cv-01688-SM-KWR |
|  | Section: Judge Susie Morgan |
| **Plaintiffs,** | Magistrate: Judge Karen Wells Roby |
| **v.** | CLASS ACTION |
| **EBAY, INC.,** A Delaware corporation, | JURY TRIAL DEMANDED |
| **Defendant.** |  |

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

TABLE OF CONTENTS

I.     ISSUE PRESENTED ............................................................................. - 1 -

II.    Article III Standing – the raison d'etre of the motion to dismiss. ................................. - 1 -
   A.  The Clapper Decision. ...................................................................... - 2 -
   B.  The United States Supreme Court on standing. ........................................... - 8 -
   C.  Mitigation of a statistically certain threat. ................................................ - 12 -

III.   eBay's 12(b)(6) arguments stand on the same leg, and fall the same way. .................. - 22 -
   A.  eBay Owes Specific Performance Due to Breach of Contract (Count IV)................... - 22 -
   B.  eBay Breached An Implied Contract (Count V) ......................................... - 25 -
   C.  eBay Breached Its Fiduciary Duty (Count VI) .......................................... - 25 -
   D.  Plaintiffs Have Adequately Alleged a Claim for Negligence (Count I)...................... - 26 -
   F.  Plaintiffs Have Adequately Pled a Claim for Bailment Pursuant to Louisiana Law .... - 29 -
   G.  Violations of Privacy Laws of States Other Than Louisiana........................................ - 30 -
   H.  eBay Violated the Louisiana Database Security Breach Notification Law (Count III) - 32 -
   I.   Plaintiff Has Adequately Pled a Cause of Action Under the Stored Communications Act
        18, U.S.C. § 2072 (Count II).............................................................. - 33 -
   J.   Plaintiffs Have Properly Alleged a Cause Of Action Pursuant To The Fair Credit
        Reporting  Act and eBay is Considered a "User of the Credit Information"................ - 35 -
   K.  Gramm-Leach-Bliley Act (Count VII) ....................................................... - 38 -

IV.    CONCLUSION ............................................................................... - 39 -

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ - 22 -

*Babbitt v. Farm Workers,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)............- 6 -, - 19 -

*Banks v. Stoneybrook Apartments,* 2000 WL 1682979 (M.D.N.C.2000) ............................... - 35 -

*Beaudry v. Telecheck Services, Inc.,* 579 F.3d 702................................................. - 36 -

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... - 22 -

*Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138 (2013)*......................................passim

*Clinton v. City of New York,* 524 U.S. 417, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998).............. - 7 -

*Cole v. General Motors Corp.,* 484 F.3d 717 (5th Cir. 2007)................................. - 12 -

*Davis v. Asset Services,* 46 F. Supp.2d 503 (M.D. La. 1998)................................. - 36 -

*Davis v. Fed. Election Comm'n,* 128 S. Ct. 2759 (2008) ..................................... - 7 -

*Department of Commerce v. United States House of Representatives,* 525 U.S. 316,
   119 S.Ct. 765, 142 L.Ed.2d 797 (1999)................................................................ - 7 -

*DiGianni v. Stern's,* 26 F.3d 346 (2d Cir.1994)..........................................- 35 -, - 36 -

*Dunmire v. Morgan Stanley Dw, Inc.*, 475 F.3d 956 (8th Cir., 2007) ..................................... - 38 -

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167,
   120 S.Ct. 693, 145 L.Ed.2d 610 (2000)................................................................ - 6 -

*Grimshaw v. Ford Motor Co.,* 1 19 Cal.App.3d 757, 174 Cal. Rptr. 348 (1981) ................... - 25 -

*Hishon v. King & Spalding,* 467 U.S. 69 (S.Ct. 1984) ........................................ - 22 -

*Holder v. Humanitarian Law Project,* 561 U.S. 1 (2010)................................... - 19 -

*In Re Adobe Systems, Inc. Privacy Litigation,*
   No. 13-cv-05226 (N.D.Cal. 9/4/2014) ...........................................- 16 -, - 17 -, - 21 -

*In re Barnes & Noble Pin Pad Litigation*, 2013 WL 4759588 (N.D.Ill. Sept. 3, 2013).......... - 20 -

*In re Deepwater Horizon*; No. 13-30095 (5th Cir., 1/10/14) ........................- 12 -, - 21 -

*In re Pharmatrak Privacy Litigation,* 329 F.3d 9 (1st Cir.2003) ........................... - 34 -

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
   No. 12-347, MDL 2360, 2014 U.S. Dist. LEXIS 64125 (D.D.C. May 9, 2014)................ - 17 -

In re Sony Gaming Networks & Customer Data Sec.
   Breach Litig. (S.D. Cal., 2014) ............................................................- 16 -, - 22 -

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   MDL No. 11-md-2119 (S.D. Cal., 2012) ....................................- 14 -, - 15 -, - 20 -

*Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) ........................- 15 -, - 20 -

*Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).........................- 4 -

*Lopez v. First Union Nat'l Bank of Florida,* 129 F.3d 1186 (11th Cir.1997).........................- 34 -

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)..........- 6 -

*MedImmune, Inc.* v. *Genentech, Inc.,* 549 U. S. 118 (2007) .................................- 17 -

*Melancon v. La. Office of Student Fin. Assistance*, 567 F. Supp. 2d 873 (E.D. La. 2008)......- 27 -

*Milbert v. Answering Bureau, Inc.,* 120 So.3d 678 (La. 2013) .............................- 26 -

*Mims v. Sewart Title Guaranty Co.*, 590 F.3d 298 (5th Cir. 2009) .........................- 11 -

*Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 130 S.Ct. 2743,
   177 L.Ed.2d 461 (2010).................................................................passim

*Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057 (9th Cir. 2002).........................- 36 -

*Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316 (C.A.5 (La.) 1994) ................................- 25 -

*Pennell v. San Jose,* 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988).......................- 7 -

*Pinero v. Jackson Hewitt Tax Serv. Inc.,* 594 F. Supp. 2d 710. 713-16 (E.D. La. 2009) ........- 27 -

*Pisciotta v. Old National Bancorp.*, 499 F.3d 629, 634 (7th Cir. 2007)......................- 18 -, - 20 -

*Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451 (D.N.J. 2013).............................- 21 -

*Remijas v. The Neiman Marcus Group, LLC,* 14-cv-01735, (N.D.IL. 09/16/14)..........- 20 -, - 21 -

*Sanders-Burns v. City of Plano*, 578 F.3d 279, 284 (5th. Cir., 2009)...................................... - 22 -

*Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208,
    94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) ............................................................................... - 4 -

*State v. Hagerty*, 251 La. 477, 205 So.2d 369 (1967) .......................................................... - 26 -

*Steffel v. Thompson,* 415 U.S. 452 (1979)............................................................................ - 19 -

*Strautins v. Trustwave*, No. 12-mc-347 (N.D. IL 3/21/14) ........................................... - 2 -, - 20 -

*Susan B. Anthony List v. Driehaus*, No. 13-193 (S.Ct. 6/16/2014) ............... - 1 -, - 2 -, - 6 -, - 20 -

*United States v. Mullins,* 992 F.2d 1472 (9th Cir.1993) ....................................................... - 34 -

*United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) ................. - 4 -

*Valley Forge Christian College v. Americans United for Separation of Church and
    State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)................................- 4 -, - 6 -

*Virginia v. American Booksellers Ass'n Inc.,* 484 U.S. 383 (1988)........................................ - 19 -

*Washington v. T. Smith & Son*, 68 So.2d 337 (La.App.Orl.1953).......................................... - 29 -

**Statutes**

15 U.S.C.  § 6809.................................................................................................................. - 38 -

15 U.S.C. § 6801.................................................................................................................. - 38 -

15 U.S.C. §§ 1681............................................................................................................... - 36 -

18 U.S.C. § 2701.................................................................................................................. - 33 -

18 U.S.C. § 2711.................................................................................................................. - 34 -

28 U.S.C. § 1331.................................................................................................................. - 36 -

FRCP 12(b)(6) ..................................................................................................................... - 24 -

FRCP 12(b)6 ........................................................................................................................ - 22 -

La. R.S. §51:3072 ................................................................................................................. - 32 -

La. R.S. § 51:3074 ............................................................................................................... - 33 -

La. R.S. §51:3075 ................................................................................................ - 32 -

La.Civ.C. §2926 ................................................................................................... - 29 -

La.Civ.C §1986 .................................................................................................... - 23 -

La.Civ.C. §1999 ................................................................................................... - 23 -

**Other Authorities**

"A New Identity Fraud Victim Every Two Seconds in 2013 According to Latest Javelin Strategy & Research Study", Feb 5, 2014, https://www.javelinstrategy.com/news/1467/92/1 ......... - 11 -

"The Consumer Data Insecurity Report: Examining the Data Breach — Identity Fraud Paradigm in Four Major Metropolitan Areas", Javelin Strategy & Research, p. 5; available at https://www.javelinstrategy.com/uploads/web_brochure/TheConsumerDataInsecurityReport_byNCL.pdf .................................................................................................... - 9 -

California Data Breach Report, Kamala D. Harris, Attorney General California Department of Justice, October 2014, at p. 1, .; available at http://oag.ca.gov/sites/all/files/agweb/pdfs/privacy/2014data_breach_rpt.pdf?; *citing*, Javelin Strategy & Research, *2014 Data Breach Fraud Impact Report* (June 2014), p.7, available at *www.javelinstrategy.com* ........................................................................ - 9 -, - 10 -

Comment, Bailment and Deposit in Louisiana, 35 La.L.Rev. 825, 828 (1975) ...................... - 29 -

Planiol, Civil Law Treatise, pt. 2, nos. 2204-05 (11th ed. La.St.L.Inst.transl.1959) ............... - 29 -

Saul Litvinoff, *The Law of Obligations In the Louisiana Jurisprudence*, 395 (1991) ............ - 23 -

*Victims of Identity Theft, 2012*, Erika Harrell, Ph.D. and Lynn Langton, Ph.D., Bureau of Justice Statistics, December 2013, NCJ 243779; http://www.bjs.gov/content/pub/pdf/vit12.pdf ... - 11 -

## I.   ISSUE PRESENTED

"If a bee's anticipated pollination patterns create a sufficiently imminent risk of injury to alfalfa farmers who fear gene flow from genetically engineered plants in nearby fields, I fail to see how the transfer of information from a data hacker to an identity thief (assuming they are not one and the same) could be deemed an overly attenuated risk of harm."

> -*Elaine E. Bucklo, United States District Judge Moyer v. Michaels Stores, Inc.*, No. 14C561, at p. 15 (N.D. Ill., July 14, 2014).

Plaintiff Collin Green seeks to have eBay perform the contract term it breached, *i.e.*, take the risk out of the data entrusted to it. This obligation is recognized by most in the industry, and in most data breach cases, the breached company voluntarily offers identity protection to achieve the security they promised.[1] eBay refuses, and asserts that until that information is used for identity fraud, Green and the putative class members have no Article III standing, as there is no certainly impending injury.  The United States Supreme Court, and others, say eBay is wrong.

## II.  Article III Standing – the *raison d'etre* of the motion to dismiss.

Standing to sue is a well-established requirement. "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, at p. 8, No. 13-193 (S.Ct. 6/16/2014) (*internal quotation marks and citations omitted*). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Id., citing*, *Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138 (2013),* at n. 5 (slip op., at 10, 15, n. 5).

---

[1] Often, the entity breached has provided identity protection to offset the anticipated damage from the breach. This was true in many instances, including Home Depot, Trustwave, Sony, Galaria, Adobe, Target, Nationwide Ins. Co., and many more.

Defendant rests the entirety of its motion to dismiss on the foundation that there is no actionable injury. And this foundation is built from selected quotes from the Supreme Court's February 26, 2013 *Clapper* opinion regarding the "clearly impending" injury requirement of Article III standing.

More precisely, eBay relies on the *Clapper* Court's statement that "future injury is too speculative to satisfy the well-established requirement that the injury must be '**certainly impending**.'" *Clapper* at 1143 (*emphasis added*). eBay also cites *Clapper* for the proposition that "respondents cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not **certainly impending**." *Id.* (*emphasis added*). At first blush, this foundation looks strong, built on recent Supreme Court jurisprudence, and used by every corporation in data breach cases since *Clapper*.

Upon closer inspection, however, this foundation is fractured and defective just below the surface. The selected quotes are only helpful for eBay until you look behind the quotes at facts and context, and before you consider all the subsequent cases, and the June 16, 2014 Supreme Court opinion in *Susan B. Anthony*, *supra*.

### A.  The Clapper Decision.

Simply stated, eBay misuses *Clapper*. A review of *Clapper* shows the Supreme Court was dealing with very different facts, and its ruling was dealing with a very different question, with a substantially heightened level of scrutiny. A growing list of courts have recently noted this critical issue, but the list of cases eBay presents almost uniformly adopt *Clapper* as a "sea change" in Article III standing analysis. *See e.g., Strautins v. Trustwave*, No. 12-mc-347 (N.D. IL 3/21/14)("And, indeed, that was arguably the prevailing view in this Circuit before *Clapper*.")

To start, the *Clapper* Court made clear that it was applying an "***especially rigorous***" standing analysis, due to the separation of powers concern at the heart of a matter of national intelligence. *Clapper,* 133 S.Ct. 1147. The separation of powers concern arises because the plaintiffs in *Clapper* sought to have the judicial system enjoin a federal agency from surveilling suspected foreign terrorists and their associates. *Clapper* was brought by persons "whose work, they allege, requires them to engage in sensitive international communications with individuals who they believe are likely targets of surveillance" by the United State government as part of its defense of the country. *Id.,* at 1143.

The plaintiffs included the attorney for Khalid Sheik Mohammed, the alleged mastermind of the September 11, 2001 attacks. He sought to protect his communications with Mohammed, his associates and family members, from U.S. surveillance. *Id.,* at 1156-7. Another of the plaintiffs actively sought to communicate with former detainees that allege torture by the CIA while held as suspected terrorist. *Id,* at 1157. These parties sought to *permanently enjoin* the United States from surveillance of their international communications by challenging the constitutionally of the surveillance statutes. In short, suspected terrorist were asking the judicial system to strike down a congressional act that empowered the executive branch to protect the homeland from terrorist attack – hence the "especially rigorous" standing analysis of this important separation of powers matter.

The Supreme Court expressly noted that to avoid potentially usurping the power of the political branches, "we have **often** found a lack of standing in cases in which the Judiciary has been requested to review actions of the political branches in the fields of intelligence gathering and foreign affairs." *Clapper*, 133 S.Ct. 1147 (emphasis added), *citing, Summers v. Earth Island Inst.*, 129 S.Ct. 1142 (2009); *Daimlerchrysler Corp. v. Cuno*, 126 S.Ct. 1854 (2006); *Raines v.*

*Byrd,* 117 S.Ct. 2312 (1997); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 102 S.Ct. 752 (1982); *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 221–222, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) (plaintiffs lacked standing to challenge the Armed Forces Reserve membership of Members of Congress); *United States v. Richardson,* 418 U.S. 166, 188, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (plaintiff lacked standing to challenge the constitutionality of a statute permitting the Central Intelligence Agency to account for its expenditures solely on the certificate of the CIA Director); and, *Laird v. Tatum,* 408 U.S. 1, 11–16, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972) (plaintiffs lacked standing to challenge an Army intelligence-gathering program).

On this complex footing, the Court applied the "especially rigorous" standing analysis, including the "certainly impending" injury discussion that eBay locks onto. A 5-4 majority of the Supreme Court found that the fear of surveillance of their communications with potential threats to the U.S. rested on too much speculation to provide Article III standing. As the Court explained, the challengers must assume they (1) were targets of surveillance, (2) by means authorized by the specific statute at issue, and not another statute, (3) which would be approved by the secret Foreign Intelligence Surveillance Court, and finally (4) that their communications would be acquired by the surveillance on the targeted foreign individuals. *Id.*, at 1148-50. Moreover, the Supreme Court feared terrorist with standing could abuse the process and by challenging the law just to determine *if* they were under surveillance. *Id*.

These facts are not instructive here. In this case, there is no question of usurping political power, or challenging the government's ability to search for terrorist threats. There is no basis to apply an "especially rigorous" standing analysis. eBay's effort to the contrary falls flat. This is a contract and tort claim. Plaintiffs allege eBay failed to meet its *contractual* and *statutory*

obligation to protect customer data from the known threat of hackers intent on stealing valuable data. The Plaintiff alleges a multi-billion dollar corporation, consuming and storing massive amounts of personal data from the plaintiffs, for its own profit, let that information leak out due to cost saving security standards.

Plaintiff states that this was done to protect short-term profits, shifting eBay's security costs to the class members. This is a breach of the specific terms of the privacy agreement contracted between the parties. Plaintiff contends the class is now suffering the costs eBay chose to avoid. eBays says those costs it chose to shift are not real injury, just fear. Plaintiff cites specific and actual threats that result directly from eBay's failures. Most obviously, the private information was accessed by hackers working specifically to find the personal data, for financial gain. They have the will, skill, and intent to use the information or sell it to those who will use it.

The FTC warns "[identity theft is] a serious crime that can wreak havoc with your finances, credit history, and reputation — and can take time, money, and patience to resolve."[2] And the California Attorney General recently detailed the startling growth of identity fraud from this type of data breach, finding that California residents have faced a 600% increase in identify fraud after data breaches in 2013 as compared to 2012.[3] Most importantly, the specific facts and the substantial risk detailed exceed the threshold set for Article III standing by the long line of cases discussed below. While its timing is convenient for eBay, the *Clapper* opinion is simply not instructive here, and not even the last word on standing from the Supreme Court.

---

[2] *See*, Plaintiffs Complaint at p.7, *citing* FTC report, at
http://www.consumer.ftc.gov/features/feature-0014-identity-theft.
[3] *See*, California Data Breach Report, Kamala D. Harris, Attorney General California Department of Justice, October 2014, at p. iv; available at
http://oag.ca.gov/sites/all/files/agweb/pdfs/privacy/2014data_breach_rpt.pdf?

Contrary to eBay's brief, a "certainly impending" injury is not the touchstone formulation of the standing inquiry. Nor is "certainly" as concrete as it would seem on its face. In fact, even the *Clapper* majority acknowledges that "substantial risk" is another way to summarize the harm needed for Article III standing, *even in an especially rigorous scrutiny analysis*. *Clapper* 133 S.Ct. 1150, n. 5. In fact, a more recent Supreme Court case on standing quotes *Clapper* but puts "certainly impending" and "substantial risk" alongside one another as if synonyms. *See, Susan B. Anthony List v. Driehaus*, at p. 9, No. 13-193 (S.Ct. 6/16/14) ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur.")

Justices Breyer, Ginsburg, Sotomayor and Kagan of the *Clapper* dissent, point out the Supreme Court has acknowledged that the boundaries of Article III standing "are matters of degree…not discernible by any precise test." *Clapper*, *dissent*, 133 S.Ct. 1155, *citing*, *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); and, *Babbitt v. Farm Workers,* 442 U.S. 289, 297, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).

The lack of one precise test for Article III standing analysis is clear from the many formulations of injury the Supreme Court has adopted over the years, based on the facts. Those formulations include the following:

- "**reasonable possibility**," *Lujan,* 504 U.S. 565, n. 2.

- "**realistic danger**," *Babbitt, 442 U.S. 298.*

- "**likely to occur**," *Friends of the Earth, Inc.,* 528 U.S. 190.

- "**reasonable probability**," *Monsanto,* 561 U.S. 139.

- "**substantial risk**," *Id*.

- "**realistic and impending threat of direct injury**," *Davis v. Fed. Election Comm'n*, 128 S. Ct. 2759 (2008).

- "**genuine threat**," *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 129, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007).

- "**substantially likely**," *Department of Commerce v. United States House of Representatives,* 525 U.S. 316, 333, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999).

- "**sufficient likelihood**," *Clinton v. City of New York,* 524 U.S. 417, 432, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998).

- "**realistic danger**," *Pennell v. San Jose,* 485 U.S. 1, 8, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988).

- "**quite realistic**," *Blum v. Yaretsky,* 457 U.S. 991, 1001, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).

So "certainly impending" is not, as eBay hopes, the definitive summary of Article III injury and certainly not in a case that is not subject to "especially rigorous" standing analysis. But what does "substantial risk" (or "sufficient likelihood," "realistic danger," *etc*.) actually mean in terms of injury at the pleading phase? Article III very simply limits the power of this court to actual cases and controversies, that raise questions for the court "in a concrete factual context conductive to a realistic appreciation of the consequences of judicial action." *Clapper*, dissent, 133 S.Ct. 1155, *quoting*, *Valley Forge* 454 U.S. 472. In other words, Article III standing requires a real and solvable controversy as opposed to "abstract intellectual problems resolved in the rarified atmosphere of a debating society." *Id.*

Today, the Court is presented with a very real controversy that needs to be resolved to stop billions in damage. One that has statistically certain injuries to millions, and one that will shape the massive and growing industry of legal (and illegal) sales of personal data. Upwards of 145 million people agreed to let eBay access their private information in consideration for access and

the assurance of security. Part of the contract for the exchange was eBay's detailed privacy policy which obligates it to take reasonable measures to protect that data. *See* Plaintiff's Complaint at p. 14.

eBay says it never "guaranteed" the safety of the data, and "reasonable" measures go beyond their contractual obligation. But that is a question for the jury. At this stage, eBay seeks to establish judicially-manifested immunity for an entire industry that consumes and sells personal information by declaring no injury can ever be found for a failure to reasonably protect personal data, because the substantial threat of identity fraud is "mere speculation." Cases before and after *Clapper*, including Supreme Court cases, disagree with eBay.

### B.  The United States Supreme Court on standing.

A more instructive, and still recent, case for the Court's analysis is the Supreme Court's 2010 Article III standing analysis in *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 177 L. Ed. 2d 461 (2010). There, farmers growing un-modified ("pure") alfalfa challenged the deregulation of genetically modified alfalfa seed. Deregulation, the farmers alleged, would risk contamination of their pure crop with modified seeds, and thus impact their business. Monsanto, the genetically modified seed manufacturer, argued the farms had no Article III injury since the harm they alleged was a speculative future injury, not certainly impending.

The Supreme Court explained that the farmers injuries were "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable rulings" because there was "*more than a strong likelihood*" that a string of events would occur. Those events included, (1) remand by the District Court to the federal agency, (2) specific terms of deregulation by the agency that would result in genetically modified seed (3) traveling by wild bees, and (4) contaminating the farmer's pure-seed alfalfa fields. Stated another way, the Supreme

- 8 -

Court held that the farmers had Article III standing based on the likely injury from of an agency ruling that had not even been drafted yet. This was so, because there was "more than a strong likelihood" of the events occurring.

This is far more attenuated than the instant case. Here, the theft has already occurred. The theft was targeted at eBay and took substantial effort to complete. The only purpose to steal the information is to profit from it. The damage they will inflict is statically certain to occur. This is not like those cases were a data tape is stolen from a car, and the intent of the thieves is unclear.

The FTC warns, "[o]nce identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance. An identity thief can file a tax refund in your name and get your refund. In some extreme cases, **a thief might even give your name to the police during an arrest**."[4] But how much damage can these hackers really do? Empirical data shows a vast number of the class members will be significantly harmed. The national survey on identity theft conducted annually by Javelin Strategy & Research shows that 36% of data breach victims in 2013 suffered fraud <u>in the same year</u>.[5] This is an increase from 28% in 2012, and 11% in 2010.[6] As of 2013, those impacted can expect between $1,900 and $9,650 in damage, according to the United States

---

[4] Plaintiff's Complaint at p. 4, *What Do Thieves Do With Your Information?*, at http://www.consumer.ftc.gov/articles/0271-signs-identity-theft#What [*emphasis added*]

[5] *See*, California Data Breach Report, Kamala D. Harris, Attorney General California Department of Justice, October 2014, at p. 1, .; available at http://oag.ca.gov/sites/all/files/agweb/pdfs/privacy/2014data_breach_rpt.pdf?; *citing*, Javelin Strategy & Research, *2014 Data Breach Fraud Impact Report* (June 2014), p.7, available at *www.javelinstrategy.com*

[6] Id., and "The Consumer Data Insecurity Report: Examining the Data Breach — Identity Fraud Paradigm in Four Major Metropolitan Areas", Javelin Strategy & Research, p. 5; available at https://www.javelinstrategy.com/uploads/web_brochure/TheConsumerDataInsecurityReport_by NCL.pdf

Bureau of Justice Statistics.[7] Thirty-six percent (36%) of the impacted groups equates to roughly 52,200,000 people suffering tens of billions in damage. (145 million x 36% x $1,900 equals $99 billion in anticipated ID fraud injury.) Even using the ***lowest*** out-of-pocket damage figure cited by the California Attorney General of $63, you still can statistically anticipate 52.2 million victims of identity fraud as a direct result of eBay's failures, who will suffer a minimum of $3.3 <u>billion</u> in direct out-of-pocket expenses.

As a lay person, billions in damage seems strikingly high for hacker attacks. But he Ca. Attorney General's report explains that most serious data breaches stem from international organized crime syndicates:

> As the profitability of cybercrimes has become apparent, criminal organizations have increasingly engineered and executed some of the most devastating data breaches in the United States. Many of these assailants are transnational criminal organizations that operate remotely, avoiding arrest or prosecution due to the obstacles law enforcement may encounter when tracking perpetrators in foreign jurisdictions . Moreover, cybercrimes can be difficult to detect, and even if offenders are prosecuted, they are likely to receive penalties that are lower by comparison to violent crimes and drug trafficking.[8]

And these crime syndicates are looking for a return on their investment. The United States Bureau of Justice Statistics reported $24.1 billion in identity fraud theft in 2012, before eBay's massive data breach. *See*, Compl. at p. 8. And non-credit card ID fraud (as eBay claims we have here) is rapidly rising. "The number of non-card fraud victims nearly tripled and it accounted for $5 billion in fraud. This fraud includes: compromised lines of credit, Internet accounts (*e.g.*, **eBay**,

---

[7] *See*, Plaintiff's Complaint at p. 8, citing. *Victims of Identity Theft, 2012*, Erika Harrell, Ph.D. and Lynn Langton, Ph.D., Bureau of Justice Statistics,
December 2013, NCJ 243779; http://www.bjs.gov/content/pub/pdf/vit12.pdf
[8] *See*, California Data Breach Report, Kamala D. Harris, Attorney General California Department of Justice, October 2014, at pp. 1-2.

Amazon) and email payment accounts such as **PayPal**."[9] Shockingly, identity fraud dramatically outpaces injury from more traditional theft: "Identity theft losses were over **4 times greater** than losses due to stolen money and property in burglaries ($5.2 billion) and theft ($5.7 billion), and eight times the total losses associated with motor vehicle theft ($3.1 billion)."[10] Would the injury be called speculative if we were talking about grand theft auto, or burglaries?

eBay will likely reply by following the logic of the *Clapper* followers, that these statistics only show that a majority of the class will not suffer injury. But it is contrary to the long line of Article III cases to minimize the statistically certain threat of billions in damage to millions of people, because some of the group will have effective ID protection, or be reimbursed by financial institutions or just get lucky. After all, not all the farmers in Monsanto were guaranteed to have bees contaminate their field. It does not follow that the millions who will be dramatically impacted do not have a claim. And it is not in keeping with Article III precedent to ignore that those in the same risk pool are compelled to protect themselves from a statistically certain harm from eBay's breach of contract.

The U.S. Fifth Circuit has explained, however, that the fact a section of the class may not suffer the damages alleged is not sufficient to destroy Article III standing; it is the allegation of injury that determines at this phase. Citing the Seventh Circuit's *Kohen* test with approval, and its opinion in *Mims v. Stewart*,[11] the Fifth Circuit repeated "it is 'almost inevitable' that 'a class will

---

[9] "A New Identity Fraud Victim Every Two Seconds in 2013 According to Latest Javelin Strategy & Research Study", Feb 5, 2014, https://www.javelinstrategy.com/news/1467/92/1 (emphasis added)

[10] *See*, Plaintiff's Complaint at p. 8, *quoting*, *Victims of Identity Theft, 2012*, Erika Harrell, Ph.D. and Lynn Langton, Ph.D., Bureau of Justice Statistics, December 2013, NCJ 243779; http://www.bjs.gov/content/pub/pdf/vit12.pdf

[11] *Kohen v. Pacific Investment Management Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009), and *Mims v. Sewart Title Guaranty Co.*, 590 F.3d 298 (5th Cir. 2009).

. . . include persons who have not been injured by the defendant's conduct[]...because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown.' According to *Kohen*, however, even this 'inevitability' does not preclude Article III standing during the Rule 23 stage." *In re Deepwater Horizon*; No. 13-30095 at p. 12 (5th Cir., 1/10/14). The Fifth Circuit went on to explain that:

> "[e]ach one of these named plaintiffs satisfies the elements of standing by identifying an injury in fact that is traceable to the oil spill and susceptible to redress by an award of monetary damages. Under the *Kohen* test, that is the end of the inquiry. As explained in *Cole v. General Motors Corp.,* 484 F.3d 717 (5th Cir. 2007), which addressed the Article III standing of named plaintiffs during class certification under Rule 23, we found it 'sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered.' At the Rule 23 stage, *Cole* provides that 'a federal court must assume arguendo the merits of [each named plaintiff's] legal claim."

*Id.*, at pp. 15-16.

### C.  Mitigation of a statistically certain threat.

The second element of eBay's *Clapper* defense is the issue of mitigation of substantial risk of injury. Here, *Monsano* continues to be instructive. eBay cites *Clapper* for the proposition that "respondents cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." As shown above, the injury is certain enough for Article III standing. *Contrary* to the sweeping nature of the quote in a vacuum, the facts of *Clapper* drive the meaning of that quote. The *Monsanto* Court found that the risk of genetically modified seeds traveling with a bee and contaminating the farmers pure seeds (if certain administrative action occurred) satisfied standing because the risk "will cause them to take certain measures to minimize the likelihood of potential contamination and to ensure an adequate supply of non-genetically-engineered alfalfa." *Monsanto*, 130 S.Ct. 2755.

Here again, the Supreme Court found that anticipated costs to mitigate a realistic threat constituted actionable injury for standing purposes; not certain injury, not past injury, just a realistic danger of injury. How does this factual case fit with eBay's bold face assertion that "future injury is too speculative" and that "respondents cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not *certainly impending?*" *Id.* (*emphasis added*). It doesn't; because the Court is not dealing with the heightened scrutiny of intelligence gathering and foreign affairs.

The 2010 *Monsanto* ruling, on the other hand, fits squarely with the facts at issue here. The theft is admitted. And while the full extent of the data stolen is still known only by eBay, it is admitted that personal information was stolen by hackers intent on selling the data. Plaintiffs have pled U.S. government empirical data demonstrating that the theft of their collective secured personal information will, with statistical certainty, cause the class billions of dollars of damage in the near future. Not knowing which class members will be in the 36% (and growing) group hit with ID fraud does not prevent the very real damage to each, of needing to mitigate their risk of being in that group, just like the alfalfa farmers. Plaintiffs allege those damages are the direct result of eBay's breach of contract. These facts more than satisfy *Monsanto's* standing criteria.

The application of Monsanto to data breach cases has been recognized by recent opinions, including the *Moyer* decisions, which stated:

> [T]he chain of causation connecting a data security breach and identity theft is not so attenuated that is makes the latter risk speculative or hypothetical. The Supreme Court found a sufficiently imminent risk of future harm in *Monsanto [supra]*, based on a causal chain that was less direct than the link between a malware attack on credit and debit card systems and identity theft…
>
> If a bee's anticipated pollination patterns create a sufficiently imminent risk of injury to alfalfa farmers who fear gene flow from genetically engineered plants in nearby fields, I fail to see how the

> transfer of information from a data hacker to an identity thief
> (assuming they are not one and the same) could be deemed an overly
> attenuated risk of harm.

*Moyer v. Michaels Stores, Inc.*, No. 14 C 561, at p. 15 (N.D. Ill., 7/14/2014).

Moreover, the Plaintiffs have taken, and will take, the same type of mitigating action the farmers in *Monsanto* did – *i.e.*, in light of the known risk, reduce the chance your financial interest are in the group impacted. This is a mitigation cost eBay should have voluntarily covered, but absent that, *Monsanto* makes clear these anticipated injuries are sufficiently real to constitute a case or controversy for this Court. Several courts have recently come to the same conclusion.

The *Sony* Court, in an MDL proceeding, analyzed the question of Article III standing in a personal data breach matter before, and again after, *Clapper* (but before *Susan B. Anthony*). *See*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, MDL No. 11-md-2119 (S.D. Cal., 2012). There, defendant Sony's database was breached. Sony offered *free identity theft protection services* to users who had their personal information stolen, thereby limiting the certainty of damage at issue. On the specific item of Article III standing for the breach of personal data security, defendant Sony argued just as eBay does here:

> "[w]ith respect to injury-in-fact, Sony argues that exposure of
> personal information alone does not constitute Article III standing
> because Plaintiffs have not alleged that the Data Breach resulted in
> the theft of their identities or unauthorized use of their Personal
> Information. Moreover, the only two named Class members who
> have alleged a cognizable loss…fail to show that they were either
> required to pay out-of-pocket for the fraudulent charges or why
> standing can be generated merely by spending money on perceived
> preventive measures."

*Id., at 11.*[12] This is obviously the same argument made by eBay in this matter: "your information

is worthless until used against you, and when you are injured by it you cannot trace it back to us."

The *Sony* court saw through this and disagreed, following the Ninth Circuit:

> Plaintiffs have articulated sufficient particularized and concrete
> harm to sustain a finding of injury-in-fact at this stage in the
> pleadings. Similar to the plaintiffs in *Krottner,* Plaintiffs allege that
> their sensitive Personal Information was wrongfully disseminated,
> thereby increasing the risk of future harm. Thus, even
> though Sony alleges no harm has yet occurred, in certain
> circumstances, as the Court finds pertinent here, future harm may be
> regarded as a cognizable loss sufficient to satisfy Article III's injury-
> in-fact requirement

*Id.*, at p. 13, *citing, Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010). It would be

interesting if the analysis of this data breach case ended here. But the *Sony* Court was called on to

revisit this issue after *Clapper* was issued. Defendant Sony argued that *Clapper* changed the

standard for injury-in-fact. The *Sony* Court, found "both *Clapper* and *Krottner* controlling." *In re*

*Sony Gaming Networks & Customer Data Sec. Breach Litig.* (S.D. Cal., 2014), at 14. Based on

those cases, the *Sony* court affirmed its prior finding and explained:

> [T]he allegations that their Personal Information was collected by
> Sony and then wrongfully disclosed as a result of the intrusion
> sufficient to establish Article III standing at this stage in the
> proceedings. [] Although Sony argues that Plaintiffs' allegations are
> insufficient because none of the named Plaintiffs have alleged that
> their Personal Information was actually accessed by a third party,
> **neither *Krottner* nor *Clapper* require such allegations**. Instead,
> Plaintiffs have plausibly alleged a "credible threat" of impending
> harm based on the disclosure of their Personal Information
> following the intrusion.

---

[12] The *Sony* court found a lack of standing as to certain defendants because the plaintiffs did not
sufficiently allege subscription to their service or a connection between them and the other Sony
defendants. *Id.*, at p. 11.

*Id.*, at 16 (*emphasis added*). The *Sony* Court made the proper analysis without the benefit of *Susan B. Anthony*, which puts to rest the idea of a new "certainly impending" standard that precluded future injury or mitigation costs as injuries-in-fact.

Following in *Sony's* footsteps, the court in the very recent *In Re Adobe Systems, Inc. Privacy Litigation*, No. 13-cv-05226 (N.D.Cal. 9/4/2014), also faced a website personal data breach and pleas from the defendant, Adobe, that *Clapper* precluded the plaintiffs' cause of action. The *Adobe* Court made a detailed analysis of *Clapper* and took note of the unique facts at play. Noting the "especially rigorous" standing analysis, the court was able to distinguish those cases cited by Adobe (and eBay now) that argued *Clapper* was a "sea change" in Article III standing. *Id.*, at p. 14. Instead, the Adobe court reconciled *Clapper* and *Krottner*. *Id.*

Once this step was taken, the *Adobe* Court analyzed the data breach and found the plaintiffs had alleged injury-in-fact. As the court explained, "even if *Krottner* is no longer good law, the threatened harm alleged here is sufficiently concrete and imminent to satisfy *Clapper*." *Id.*, at 14. The *Adobe* Court reached this conclusion based on a full understanding of the nature of the targeted data breach, and obvious intent of the hackers is targeting Adobe.

> [T]he risk that Plaintiffs' personal data will be misused by the hackers who breached Adobe's network is immediate and very real. Plaintiffs allege that the hackers deliberately targeted Adobe's servers and spent several weeks collecting names, usernames, passwords, email addresses, phone numbers, mailing addresses, and credit card numbers and expiration dates. [] Plaintiffs' personal information was among the information taken during the breach. [] Thus, in contrast to *Clapper*…here there is no need to speculate as to whether Plaintiffs' information has been stolen and what information was taken.
>
> Neither is there any need to speculate as to whether the hackers intend to misuse the personal information stolen in the 2013 data breach or whether they will be able to do so. Not only did the hackers deliberately target Adobe's servers, but Plaintiffs allege that the hackers used Adobe's own systems to decrypt customer credit card

- 16 -

numbers. [] Some of the stolen data has already surfaced on the Internet, and other hackers have allegedly misused it to discover vulnerabilities in Adobe's products. [] Given this, the danger that Plaintiffs' stolen data will be subject to misuse can plausibly be described as "certainly impending." Indeed, the threatened injury here could be more imminent only if Plaintiffs could allege that their stolen personal information had already been misused. However, to require Plaintiffs to wait until they actually suffer identity theft or credit card fraud in order to have standing would run counter to the well-established principle that harm need not have already occurred or be "literally certain" in order to constitute injury-in-fact.

*Id.*, at 15. The last sentence is critical in data breach cases. Courts have long held that a plaintiff need not wait for the injury to be inflicted before they suffer injury-in-fact. *See*, *Monsanto*, *supra*, and, *MedImmune, Inc.* v. *Genentech, Inc.,* 549 U. S. 118, 128-129 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat"). In data breach cases, all the key facts are held by the corporation breached, and the criminals. The customer are lucky to even get notice. As Plaintiff alleges, eBay did not even notify customers until after the news had leaked out. *See*, Compl. at p. 7. Neither the company or the hacker has an incentive to inform the customers of their risk. This is why regulatory action has begun, and is coming in waves to protect the customers eBay, and others, prefer to keep in the dark. But those statues are not needed to advance this action. As the *Adobe* Court understood, the threat presented after a targeted data breach is very real, and quite imminent.

And the *Adobe* Court astutely noted that unlike the *SAIC*[13] case where data tapes were stolen from a car along with a stereo and GPS, targeted data breaches prove the intent of the thief. *See, Adobe*, at p. 16, *citing SAIC*. The *Adobe* Court understood that the facts drive the immediacy

---

[13] *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, No. 12-347, MDL 2360, 2014 U.S. Dist. LEXIS 64125 (D.D.C. May 9, 2014) (hereinafter "SAIC")

of the injury. The court realized that the car thief in *SAIC* would need to recognize the tapes value, get specialized equipment to read them, break the encryption, and then misuse the data in order for the injury to be realized. *Id*. Here, as in *Adobe*, the hackers have all they need to fully use the stolen data. The data was the target of the attack, and the hackers are data thieves who satisfy the demand of a $24 billion a year industry. As *Adobe* instructs, there is no need to speculate about the hackers intent, or their ability to follow through.

In addition to the Ninth Circuit (*Krottner, supra*), the Seventh Circuit has also found Article III standing in personal information data breach cases. As the *Moyer* Court explained in rejecting many of the cases eBay relies on, the *Susan B. Anthony List* opinion clarifies that Adobe was correct: existing case law still applies. *Moyer v. Michaels Stores, Inc.*, 2014 WL 3511500, No. 14-cv-561, at p. 11 (N.D. Ill., 7/14/2014). That case law included the Seventh Circuit's *Pisciotta* opinion, which held "the injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions." *Pisciotta v. Old National Bancorp.*, 499 F.3d 629, 634 (7th Cir. 2007). This obviously conflicts with eBay's application of *Clapper*, and the *Moyer* Court addressed that conflict head-on:

> Michaels argues that the Supreme Court's recent decision in *Clapper* effectively abrogates *Pisciotta* by imposing a tighter imminence requirement for plaintiffs seeking to establish standing based on a future risk of harm. Two courts in this district have agreed with Michaels on this point. *See Strautins v. Trustware Holdings, Inc.,* No. 12 C 9115, 2014 WL 960816, at *4 (N.D. Ill. Mar. 12, 2014) [ ]; *In re Barnes & Noble Pin Pad Litig.*, No. 12 C 8617, 2013 WL 4759588, at *3 (N.D. Ill. Sept. 3, 2013) [ ].
>
> ***I respectfully disagree*** with my colleagues that *Clapper* should be read to overrule *Pisciotta*'s holding that an elevated risk of identity theft is a cognizable injury-in-fact. *See In re Sony Gaming, [supra]* (rejecting argument that *Clapper* overruled Ninth Circuit precedent, *Krottner [supra]*, that adopts *Pisciotta*'s reasoning).

*Id.*, at p. 12 (*emphasis added*). The *Moyer* Court explicitly found that the *Clapper* standard was more demanding than the standard applied outside the heightened scrutiny of national intelligence and foreign affairs:

> First, *Clapper* applied the imminence requirement in an "especially rigorous" fashion given that the merits of the case would have required the Court to decide whether the FISA Amendments Act of 2008, 122 Stat. 2426, was unconstitutional…. The labels used to describe the imminence requirement in these cases – *i.e.*, injury risks that are not "chimerical," "imaginary," or "wholly speculative" or, conversely, ones that are "credible" and "well-founded" – ***sound less demanding than Clapper's rigorous application of the "certainly impending" standard.***

*Id.*, at 13 (*internal citations omitted, emphasis added*). The *Moyer* Court went on to explain that the more recent *Susan B. Anthony* decision "catalogues the myriad circumstances in which a risk of future harm…has been deemed sufficiently imminent to establish Article III standing." *Id., citing Steffel v. Thompson,* 415 U.S. 452, 459 (1979) (finding sufficiently imminent injury where risk of enforcement was not "chimerical"); *Babbitt,* 442 U.S. 302 (finding sufficiently imminent injury where fear of prosecution was not "imaginary or wholly speculative"); *Virginia v. American Booksellers Ass'n Inc.,* 484 U.S. 383, 393 (1988) (finding sufficiently imminent injury where fear of prosecution was "well-founded"); *Holder v. Humanitarian Law Project,* 561 U.S. 1, 15 (2010) (finding sufficiently imminent injury where fear of prosecution was "credible").

Having considered the very arguments eBay makes here, and having analyzed the very cases eBay relies on here, the *Moyer* Court found injury-in-fact for Article III standing based on the elevated risk of identity theft stemming from the data breach.

> I conclude that the elevated risk of identity theft stemming from the data breach at Michaels is sufficiently imminent to give Plaintiffs standing. This conclusion follows from *Pisciotta* and is consistent with a host of Supreme Court decisions finding standing based on an imminent risk of future injury. *Clapper* is distinguishable based

> on its admittedly rigorous application of the "certainly impending"
> standard in a case that involved (1) national security and
> constitutional issues and (2) no evidence that the relevant risk of
> harm had ever materialized in similar circumstances.

*Id.*, at p. 16.

As the *Moyer* opinion succinctly lays out, the district court opinions eBay cites are wrong, to the extent they adopt eBay's undisciplined reading of *Clapper*. This Court is not bound to follow the erroneous application of clear law simply because some districts have done so. As the *Sony (2014)* Court stated, *Clapper* did not create a new Article III framework. *See, Sony*, p. 14. And with the June 2014 release of the *Susan B. Anthony* decision, it is now clear *Sony*, *Krottner*, *Pisciotta* and *Moyer* are correct in following *Monsanto*.

Another intellectually rigorous opinion that honestly considers *Clapper*, and the string of cases eBay relies on, is *Remijas v. The Neiman Marcus Group, LLC,* 14-cv-01735, Doc. 49, (N.D.IL. 09/16/14). *Remijas* considers the conflict between *Strautins*, and *Barnes & Noble* (eBay's cases) and the *Moyer* decision (above). *Id.*, *citing Moyer, supra, Strautins v. Trustwave Holdings, Inc.*, 2014 WL 960816 (N.D.Ill. March 12, 2014); and *In re Barnes & Noble Pin Pad Litigation*, 2013 WL 4759588 (N.D.Ill. Sept. 3, 2013). *Remijas* summarized *Strautins'* conclusion that *Clapper* "implicitly overruled a facially more relaxed standard for evaluating standing" in data breach cases, as compared to *Pisciotta*. *Id.*, at p. 3. As the *Remijas* court noted, the *Barnes & Noble* Court adopted the heightened scrutiny of *Clapper* without analysis of the heightened scrutiny or reference to *Pisciotta*.[14]

---

[14] *Id.*, at 3. ("[T]hough I also note that the *Clapper* Court itself acknowledged that the underlying facts called for an 'especially rigorous' standing inquiry. [] Those facts are not present here…."). And the *Galaria* Court falls into the same trap, treating *Clapper* as a new heightened standard for standing. *Galaria v. Nationwide Mutual Ins. Co.*, Nos. 13-cv-118, 13-cv-257, 2014 U.S. Dist. LEXIS 23798 (S.D. Ohio Feb. 10, 2014)

After considering these cases, and the in-depth analysis of *Moyer*, the *Remijas* Court aligned itself with *Moyer*, finding that *Clapper's* "especially rigorous" standing inquiry was not warranted in a data breach case. *Id.*, at 4. Moreover, the *Remijas* Court noted a critical element from *Monsanto*, *supra*, that each matter has important facts that drive an inquiry as to injury-in-fact. The court noted that in *Pisciotta* (as here) the plaintiff's data was alleged to have been stolen. In contrast, the *Srautin* and *Barnes & Noble* plaintiffs merely alleged a "possibility" their data has been stolen. *Id.,* at 5. (The *Adobe* Court also noted this key fact from *Strautins* and *Barnes & Noble* cases. *See, Adobe, supra*, at p. 16.) Applying this analysis to the facts before it, the *Remijas* Court found the plaintiffs lacked standing because they merely alleged their information "may" have been stolen. *Id.* Similarly, in *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451 (D.N.J. 2013), the plaintiff failed to allege a connection between her data and the defendant. This was a classic lack-of-standing example as it lacked the "traceability" element of Article III standing.

In the instant matter, Plaintiff has alleged his, and all the putative class members', data has been stolen due to eBay's failure to properly secure it, per the contract terms. And following the guidance of the Fifth Circuit in *Deepwater Horizon*,[15] the class definition will apply only to those people eBay notified of the theft of their data. And while eBay may refute its obligation, it is an actionable claim at the motion to dismiss phase. As the *Sony* Court found, there is a legal duty to protect a customer's personal information:

> Although neither party provided the Court with case law to support or reject the existence of a legal duty to safeguard a consumer's confidential information entrusted to a commercial entity, the Court finds the legal duty well supported by both common sense and California and Massachusetts law. [] As a result, because Plaintiffs allege that they provided their Personal Information to Sony as part of a commercial transaction, and that Sony failed to employ reasonable security measures to protect their Personal Information,

---

[15] *In re Deepwater Horizon*; No. 13-30095 at p. 17 (5th Cir. 1/10/14).

- 21 -

> including the utilization of industry-standard encryption, the Court
> finds Plaintiffs have sufficiently alleged a legal duty and a
> corresponding breach.

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., at p. 22 (S.D. Cal., 2014)

(*internal citations omitted*).

### III. eBay's 12(b)(6) arguments stand on the same leg, and fall the same way.

eBay's motion under FRCP 12(b)(6) is easy to resolve after analyzing the Article III

standing issues above. To survive, Plaintiffs must plead enough facts to "state a claim for relief

this is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

And the plaintiff must be given the benefit of construing the alleged facts in the "light most

favorable to the plaintiff." *Sanders-Burns v. City of Plano*, 578 F.3d 279, 284 (5th. Cir., 2009).

Dismissal is available to eBay "only if it is clear that no relief could be granted under any set of

facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S.

69, 73 (S.Ct. 1984).

### A. eBay Owes Specific Performance Due to Breach of Contract (Count IV)

Each class member entered a contract with eBay – eBay admits this. *Deft. MTD* pp. 25 –

27. In exchange for access to buying and selling features on eBay, class members provided

consideration in the form of detailed personal data. eBay "committed to ensuring a safe and secure

online experience" and agreed to keep that information protected – eBay admits this as well. *See*,

*id.*, and eBay email notice to customers of data breach, attached as Exhibit A, and available at

http://announcements.ebay.com/2014/05/ebay-inc-to-ask-ebay-users-to-change-passwords/.

Whether the guarantee was for "reasonable security" or some lower standard eBay argues for now,

is of no moment at this phase. The point of keeping the data secure is to keep it out of the hands of data hackers looking to fuel the multi-billion dollar ID fraud industry. eBay contractually bound itself to secure the data in order to get the use of that data. eBay failed to secure the data. Again, an admitted point. *See*, Exhibit A. Plaintiffs demand that eBay perform this element of the contract – *i.e.*, to remove the threat of unsecured data. Plaintiffs want this done **now**, by the only means possible – quality, long-term identity fraud monitoring.

Specific performance is a breach of contract remedy recognized back to Roman law, and applies in every state. *See*, Saul Litvinoff, *The Law of Obligations In the Louisiana Jurisprudence*, 395 (1991) ("In Anglo-American law, [] the parallel system of equity will grant relief to an obligee in the form of specific performance whenever damages are not an adequate compensation.") In Louisiana, "specific performance is the primary remedy for the non-performance of an obligation." *Id.*, at 398, §170. This long standing tenet resides at La.Civ.C §1986 (*emphasis added*):

> Upon an obligor's failure to perform an obligation to deliver a thing, **or not to do an act**, or to execute an instrument, the court shall grant specific performance plus damages for delay if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee.

And to the extent credit monitoring is not deemed the exact performance promised, the closest possible substitute performance is well within the Court's discretion. "When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages." La.Civ.C. §1999.

eBay seeks immunity from its security obligations. If courts look at data breaches as a victimless crime, eBay and its internet brethren will be immunized through an efficient breach.

This outdated[16] view would validate eBay's corporate decision to skip needed security upgrades and put that risk on the millions of users they attract *via* contract terms they have no need to honor.

eBay also argues Plaintiffs' claims must be dismissed because they fail to plead the technical failures that caused eBay's breach in sufficient detail. *See*, *Deft. MTD p.* 25. Of course, no one could do that at this phase, except eBay and the hackers. Plaintiffs have pled a breach (data and contract) due to less than reasonable security measures as reported by noted security industry experts. Plaintiffs allege this was done to save eBay money, in spite of the known risk. Compl. ¶ 27. Plaintiffs have satisfied their pleading requirements under FRCP 12(b)(6), at this phase.

eBay further asserts that Plaintiffs do not plead damage. This goes back to the injury-in-fact theory above. In short, eBay argues that a breach of contract does not result in eBay having to repair, or provide the service promised, because identity thieves holding the data is not a damage. While it may be hard to quantify (hence the demand for specific performance) it cannot be denied that Plaintiffs are not in as good a position as they were. It cannot be denied eBay contractually bound itself to prevent this specific damaging event, and still can.

While repair is impossible, as the data cannot be pulled back in, the data can be protected or neutralized, to achieve the contract's terms. So the argument is not that cure of the damage is impossible. eBay is actually pleading that immunity is warranted because the cost of specific performance (*i.e.*, damage) is only $10 - $30 per month, and therefore *de minimis*. Does that change when there are 145,000,000 people picking up the tab for eBay's contractual failure? (145 million x $15/mo. ID protection x 12 mos. = $26 billion per year.) Twenty-six billion dollars ***per year*** in consumer costs to achieve the protection eBay contracted to provide is not *de minimis* – even to

---

[16] See above discussion of the global organized crime driving the targeted attacks on data, to fuel a $25 billion (and expanding) yearly market in ID fraud.

eBay. And the costs must be carried for *years* as the risk eBay created will not go away when month 13 tolls. And yes, the pound of cure is possibly more expensive than the ounce of prevention. But that was a business decision eBay made, just as Ford decided to save $11 per Pinto at the statistical risk of 180 additional deaths.[17] Only a ruling by this Court granting eBay immunity will validate its breach of contract as an efficient breach.

## B.  eBay Breached An Implied Contract (Count V)

eBay is correct that an implied contract action has no place where a real contract exists, as here. Here, the implied contract claim is pled in the alternative. eBay disputes what the terms of the contract mean. eBay says it never promise to provide even reasonable security. If this Court were to dismiss the Plaintiffs' contract claim, the implied contract claim should survive. The jury can determine if an implied contract was created by eBay's routinely updated and distributed Privacy Policy. Each policy created, at a minimum, an implied contract regarding the level of safety eBay was contracting to provide.

## C.  eBay Breached Its Fiduciary Duty (Count VI)

eBay asserts that Plaintiffs do not allege a fiduciary relationship.  A fiduciary relationships is a "special relationship[] of trust and confidence." *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316 (C.A.5 (La.), 1994)  The cases eBay cites from the late 1990's do not deal with facts like those at issue here, and are only generally instructive. The data mentioned in those cases was trade secret data between corporate entities. As the *Omnitech* Court explained, the "trade secrets" agreement drafted by counsel from the parties controlled that issue, and so no special fiduciary relationship was created. *Id*. But the court further "recognize[ed] that one acts in a fiduciary

---

[17] *Grimshaw v. Ford Motor Co.,* 1 19 Cal.App.3d 757, 174 Cal. Rptr. 348 (1981)

capacity when he or she transacts business or handles money which is not his or her own or for his or her benefit." *Id.*, *summarizing State v. Hagerty*, 251 La. 477, 205 So.2d 369, 374 (1967).

That is exactly what eBay did here – handled plaintiffs' data that needed to be kept under lock and key, for eBay's financial benefit. According to *Omnitech*, which eBay cites, it owed a fiduciary duty to the putative class members regarding their data. Again, this count is pled in the alternative to the contract claim. If no contractual obligation is found, a fiduciary duty should.

### D.  Plaintiffs Have Adequately Alleged a Claim for Negligence (Count I).

Louisiana courts resolve most negligence cases by employing a duty/risk analysis, under which a plaintiff must prove five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard of care; (2) whether the defendant's conduct failed to conform to the appropriate standard of care; (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; and (5) whether the plaintiff was damaged. *See Milbert v. Answering Bureau, Inc.*, 120 So.3d 678 (La. 2013). Additionally, pursuant to Louisiana Civil Code Article 2315, states that [e]very act whatever of man that causes damage to another obligates him by whose fault it happened to repair it." Plaintiff has properly stated a claim for negligence pursuant to Louisiana law.

eBay ignores the facts and allegations set forth in the Plaintiffs' Class Action Complaint. Plaintiff has easily set forth the elements required to establish a cause of action for negligence against eBay. Plaintiff alleges in the Complaint that eBay, owed a duty of care to Plaintiffs to protect the personal information it insisted on holding and that eBay's was negligent in failing to adopt reasonable and available safeguards that would have prevented the data breach from resulting in the theft of millions of files of personal information of plaintiff and the class. As

discussed, hereinabove, plaintiff and the class have suffered actual damages, in addition to the increased risk of indemnity theft and the need for credit monitoring, which eBay refuses to provide.

In cases cited by Defendant's in their Motion to Dismiss (at p. 15), they fail to point out a key distinguishing factor which separates this instant action. In *Pinero v. Jackson Hewitt Tax Serv. Inc.,* 594 F. Supp. 2d 710. 713-16 (E.D. La. 2009) the court ruled that the mere possibility that customer's person information was at increased risk did not constitute actual injury sufficient to maintain a customer's negligence claim, based on a tax return preparer's alleged mishandling of her confidential personal information, where there was no evidence that any third party accessed customer's information and stole her identity. In *Pinero,* there was no allegations of anyone actually accessing and using the improperly discarded confidential information. Conversely, in the instant action, there has been a theft of identity by hackers to which eBay was forced to disclose to its customers, including Plaintiff. Unlike cases cited by defendants, plaintiffs can and have properly alleged that someone [third party hackers] have actually used the disclosed information and have caused damages. In *Pinero*, the plaintiff had her confidential information returned to her by a "good samaritan" who returned the documents to plaintiff without using the confidential information. *See Pinero* at 716. Unfortunately, in this action, we have no good Samaritans, only criminal hackers intent on using confidential information, and eBay, intent on ignoring it.

*Melancon v. La. Office of Student Fin. Assistance*, 567 F. Supp. 2d 873, (E.D. La. 2008), involved the loss of backup electronic data from a truck operated by Iron Mountain. The information belonged to students applying for financial assistance and scholarships. In *Melancon* it was undisputed that no personal information had been compromised and Plaintiffs failed to offer evidence that any third party had gained access to the data, and as such, damages were purely speculative. *Id*., at 877. Unfortunately, in the present action, plaintiff has correctly pled that his

and class members' personal information has been compromised and it is undisputed and properly pled that hackers have in fact gained access to the confidential data. Compl. ¶¶ 45-55.

Plaintiffs herein have more than adequately pled the above referenced factors, including the breach of duty by eBay in failing to adequately protect against Unauthorized Access. Among other issue, the complaint alleges that industry experts lambasted eBay for failing to properly secure data in its possession. Compl. ¶¶ 36 -39. In fact, one industry expert, called eBay's failure to encrypt personal information, "inexcusable." Compl. ¶ 37. eBay cannot credibly argue that they owed no duty to Plaintiff and the consumer Class Members. As one court in a recent data breach case noted, the "duty to safeguard a consumers confidential information entrusted to a commercial entity" is "well-supported by … common sense …" *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d at 966.

### E.  eBay's Negligence Caused Plaintiff and Class Members to Suffer Actual Damages

Unlike the cases cited by defendant, Plaintiff and the Class Members herein do not allege they were damaged simply because their personal information was exposed or improperly discarded.  Rather, plaintiffs have alleged non-speculative damages arising from the actual theft and misuse of their private information which eBay belatedly announced over two (2) months after the incident. Compl. ¶¶ 18, 21. Plaintiff and Class Members' stolen personal information undeniably has value as individuals risk jail time to steal it. In *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 859, 866 (N.D. Cal. 2011) the court held that plaintiffs' personal information had value, denying a motion to dismiss a negligence claim on the grounds that disclosure of the plaintiffs' personal information was insufficient to allege actual damages. As plaintiff and class members' data has now been stolen and is available for sale on the black market, it is incredible that eBay still refuses to offer even one year of credit monitoring to their impacted customers.

eBay's negligence has placed the burden and expense on plaintiff and the class members to obtain and pay for credit monitoring. In an analogous data breach decision, *Anderson v. Hannaford Brothers Co.*, the First Circuit held that these damages are recoverable through negligence.  659 F.3d 151, 164 (1st Cir. 2011).

### F.  Plaintiffs Have Adequately Pled a Claim for Bailment Pursuant to Louisiana Law

Each class member entered a contract with eBay – eBay admits this at pp. 25 – 27 of its motion to dismiss. In exchange for access to buying and selling features on eBay, class members provided consideration in the form of detailed personal data. eBay agreed to keep that information protected – eBay admits this as well. Article 2317 of the Civil Code provides that one is liable for damages caused by 'things which we have in our custody.' Custody in this article means supervision and control. *See, Washington v. T. Smith & Son*, 68 So.2d 337, 346 (La.App.Orl.1953). Article 2893 of the Civil Code states that "any nonconsumable thing that is susceptible of ownership may be the object of a loan for use." Pursuant to Art. 2894, the borrower is bound to keep, preserve and use the thing lent as a prudent administrator. As pointed out above, defendant eBay exercised full supervision and control over the personal information of plaintiff and the class members and defendant, therefore, is liable for damages caused thereby. Deposit is a contractual relationship created by the parties' mutual consent, whether actual or implied. La.C.C. arts. 2926, 2929, 2932, 2933; Comment, Bailment and Deposit in Louisiana, 35 La.L.Rev. 825, 828 (1975); 2 M. Planiol, Civil Law Treatise, pt. 2, nos. 2204-05 (11th ed. La.St.L.Inst.transl.1959).

Courts commonly hold that intangible personal property subject to a bailment includes electronic data. *See Bridge Tower Dental, P.A. v. Meridian Computer Ctr., Inc.,* 272 P.3d 541, 546 (Idaho 2012) (computer hard drive data); *Shumeli v. Corcorcan* Group, 802 N.Y.S.2d 871, 877-78 (N.Y. Sup. Ct. 2005) (information stored electronically on a computer); *David Barr Relators, Inc.*

*v. Sadei,* No. 03-97-00138-CV, 1998 WL 333954 at *3 (Tex. App. Austin June 25, 1998) (computer data). Plaintiffs have alleged the entrustment of their private information to eBay and during the time of possession of the plaintiff and class members' private information, eBay breached its duty to safeguard the information and plaintiff and the class members have suffered harm. Compl. ¶¶ 93-96. Plaintiff and Class Members had a direct relationship with eBay and plaintiffs did not retain any right to control how eBay stored their personal information. As discussed hereinabove, courts have held that plaintiffs' personal information does have value and plaintiffs have properly alleged the personal information was accessed without authorization.

### G. Violations of Privacy Laws of States Other Than Louisiana.

Defendant correctly states that Plaintiff alleges that eBay failure to protect his personal information violates the laws of 47 jurisdictions, which includes Louisiana's law addressing privacy, LDSBNL. Defendant omits, however, "and the putative class members." Count IX was included to demonstrate that at least 47 other states, the District of Columbia, Puerto Rico and the Virgin Islands have recognized the growing crisis involving identity theft and the enactment of laws similar to the LDSBNL. While defendant is correct that the additional laws cited might not apply to plaintiff, Collin Green, residing in Louisiana, plaintiff seeks to represent a class of other similarly situated residents from each of the other 47 states and territories with personal information protection laws. eBay has victims of its breach in every state and territory, and each state's law will be applied to the class members that have those claims.

It is premature to make decisions regarding which state laws have a role here as we have not reached the Class Certification stage. Individual class members may have slightly different causes of action depending on their circumstances, and still satisfy Rule 23. But dismissal is not

appropriate at this stage. *See, Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); Edwards v. 21st Century Ins. Co., No. 09-04364, 2010 WL 2652247, at *4 (D.N.J. June 23, 2010).

eBay's attempt to strike at class issues now is similar to the defendant's attempt in *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D.N.J. 2009). The *Ramierz* Court did not allow it, and explained:

> Defendants' argument appears to conflate the issue of whether the named Plaintiffs have standing to bring their individual claims with the secondary issue of whether they can meet the requirements to certify a class under Rule 23….The Complaint makes clear that the so-called "sister state" consumer protection laws are only implicated by members of the putative class…. Hence, the fact that the named Plaintiffs may not have individual standing to allege violations of consumer protection laws in states other than those in which they purchased Defendants' calling cards is immaterial.

A number of other courts have made similar findings, protecting the plaintiffs at the motion to dismiss phase in light of Rule 23 issues.[18] Since the filing of the complaint, plaintiff's counsel has been contacted by impacted customers of eBay from around the United States, all who have suffered a multitude of injuries and some have actually had their identity stolen by hackers.   IF this issue must be resolved at this phase, Plaintiff would respectfully request the Court grant the opportunity to amend this Complaint to add additional plaintiff's from other states covered by these various statutes.

---

[18] *See, e.g., In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013); *Owens v. Apple, Inc.*, No. 09-cv-0479-MJR, 2009 WL 5126940 (S.D. Ill. Dec. 21, 2009); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 579-80 (M.D. Pa. 2009); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006 (S.D. Iowa 2009); *Woodard v. Fid. Nat'l Title Ins. Co.*, No. 06-cv-1170, 2007 WL 5173415 (D.N.M. Dec. 4, 2007); *Jepson v. Ticor Title Ins. Co.*, No. 06-1723-JCC, 2007 WL 2060856 (W.D. Wash. May 1, 2007); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 267-70 (D. Mass. 2004); *Ferrell v. Wyeth-Ayerst Labs., Inc.,* No. C-1-01-447, 2004 WL 6073010 (S.D. Ohio, June 30, 2004).

**H. eBay Violated the Louisiana Database Security Breach Notification Law (Count III)**

Identify theft and the failure to protect identity theft by companies like eBay is rising to epidemic proportions. The Louisiana Legislature has recognized the magnitude of this problem. In enacting La. R.S. 51:3072, it specifically found that the widespread collection of personal data placed put residents at risk. "Criminals who steal personal information use the information to open credit card accounts, write bad checks, buy automobiles, and commit other financial crimes using the identity of another person." *Id.*, at (3). And the Legislature noted the need for rapid notice so the injured customers could quickly protect their identity. *Id.*, at (4).

Because of these facts, and eBay's negligence and other enumerated causes of action, plaintiff and the class members must now take extra, preventative measures to guard against the statistical certainty of identity theft from eBay's breach. As a result and as adequately pled in the Complaint, plaintiff and class members were not immediately and/or timely notified of the security breach at issue herein, and therefore satisfying their pleading requirements under FRCP 12(b)(6). Compl. ¶ 65.

Under LDSBNL, a plaintiff may bring a civil action "to recover actual damages resulting from the failure to disclose *in a timely manner* to a person that there has been a breach of the security system resulting in the disclosure of a person's personal information." La.R.S. 51:3075 (emphasis added); *see also Ponder*, 522 F. Supp.2d at 796-98. "Breach of the security system" is defined to mean "the compromise of the security, confidentiality, or integrity, of computerized data." La.R.S. 51:3073(2). As discussed hereinabove, plaintiff has suffered actual damages, as distinguished by the cases cited by defendant where the data was not stolen, but rather improperly discarded.

Second, Plaintiff has alleged that his and class members' personal information, as defined by LDSBNL was provided to eBay. Compl. ¶¶ 18, 19, 20. This confidential data satisfies the requirements of "personal information" pursuant to La.R.S. § 51:3073(4)(a). Moreover, plaintiff has alleged that his and class members "personal information" was part of the Accessed Information by third party hackers, (Compl. ¶¶ 18, 19, 20, 65, 66),  thus satisfying the requirements of the LDSBNL. *See* La.R.S. § 51:3074(B) (stating that notification is required if personal information was, or is reasonable believed to have been, acquired by an unauthorized person.)

Finally, Plaintiff adequately pled that eBay did not notify plaintiff and the class members in a timely manner pursuant to LDSBNL which requires notification be made "in the most expedient time possible and without unreasonable delay…" La.R.S. § 51:3074(C). Plaintiff has alleged that the security breaches occurred in February-March but eBay waited until May 21, 2014 to alert its customer, *and only after the security breaches had been reported by independent internet sources.* Compl. ¶ 21, (emphasis added). At this stage of the proceedings, prior to discovery, plaintiffs' allegations that eBay delayed and did not immediately notify plaintiff and class members of the security breach until after independent third party reports began surfacing, adequately meets the pleading standard of LDSBNL.

## I. *Plaintiff Has Adequately Pled a Cause of Action Under the Stored Communications Act 18, U.S.C. § 2072 (Count II)*

Plaintiffs have properly alleged that eBay provides electronic communication service between buyers and sellers of merchandise *via* its remote computing services. Compl. ¶ 59. The Stored Communications Act, ("SCA"), 18 U.S.C. § 2701 *et seq*., was added as a new provision to the Electronic Communications Privacy Act ("ECPA"). The ECPA defines "electronic communication service" to be "**any** service which provides to users thereof the ability to send **or**

receive wire or electronic communications." 18 U.S.C. § 2510(15) (emphasis added).[19] "Remote Computing Service" is defined as "the provision to the public of computer storage or processing services by means of an electronic communications system.  18 U.S.C. § 2711(2).

Plaintiffs have sufficiently alleged the required elements necessary to establish a violation under the SCA. First, pursuant to Section 2702, Plaintiff's Complaint alleges that eBay's web site and its data storage systems, provide electronic communications between buyers and sellers of merchandise *via* eBay's remote computing services. Compl. ¶ 59-60.  Plaintiff concedes that Count II turns on whether or not eBay is considered a "Remote Computing Service." However, Courts have held that similar transmissions constitute electronic communications. *See, e.g. In re Pharmatrak Privacy Litigation,* 329 F.3d 9, 18 (1st Cir.2003) (transmission of completed on-line forms to pharmaceutical company websites constitutes an electronic communication); *Lopez v. First Union Nat'l Bank of Florida,* 129 F.3d 1186, 1189–90 (11th Cir.1997), *cert. denied,* 531 U.S. 1052, 121 S.Ct. 656, 148 L.Ed.2d 559 (2000) (reversing Rule 12(b)(6) dismissal of § 2702 claim against bank that disclosed contents of electronic wire transfer, because allegations in plaintiff's complaint must be accepted as true and defendant had merely denied the allegation that it was an electronic communication service).  In *United States v. Mullins,* 992 F.2d 1472, 1474, 1478 (9th Cir.1993), *cert. denied* 510 U.S. 994, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993), the court found American Airlines, through its computerized reservation system, which enables travel agents to gather flight information and directly input travel reservations or make changes to existing reservations through the use of passenger name records, to be "a provider of wire or electronic communication service").

---

[19] The SCA was adopted for the specific purpose of "update[ing] and clarifying Federal privacy protections and standards in light of the dramatic changes in new computer and telecommunications technologies."  *See* Electronic Communications Privacy Act of 1986, S. Rep. No. 99-541, 99th Cong. (1986), reprinted in 1986 U.S.C.C.A.N. at 3555 (hereinafter "Senate Report").

Plaintiffs have satisfied their pleading requirements under FRCP 12(b)(6), at the pre-discovery phase. The determination of whether or not eBay is and/or provides "Remote Computing Services" to plaintiff and the class members must be ascertained through discovery. Defendant's blanket denials and a ten year old law review article are insufficient.

### J.   Plaintiffs Have Properly Alleged a Cause Of Action Pursuant To The Fair Credit Reporting  Act and eBay is Considered a "User of the Credit Information"

Congress enacted the Fair Credit Reporting Act as a consumer protection status. "A Central purpose of the FCRA is to ensure the confidentiality and accuracy of consumer credit information and to require that reasonable procedures are in place to meet those goals." *Banks v. Stoneybrook Apartments,* 2000 WL 1682979, at *1 (M.D.N.C.2000). The FCRA regulates "consumer reporting agencies" in their preparation and dissemination of "consumer reports." *DiGianni v. Stern's,* 26 F.3d 346, 348 (2d Cir.1994). The FCRA imposes civil liability upon users and consumer reporting agencies that willfully or negligently violate the statute. *DiGianni,* 26 F.3d at 348.[20]

The Act requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy,

---

[20] The FCRA defines a "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f). Thus, as used in the FCRA, the term "consumer reporting agency" refers to "firms that are in the business of assembling and evaluating consumer credit information." *DiGianni,* 26 F.3d at 349. The term "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-(A) credit or insurance to be sued primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under [this title]." 15 U.S.C. § 1681a(d)(1).

relevance and proper utilization of such information. *Davis v. Asset Services,* 46 F. Supp.2d 503, 507 (M.D. La. 1998). Although much of the Act regulates the behavior of the credit reporting agencies, it also extends to the "users" of the credit information. *See, Davis,* at 507. The term "users" refers not only to the ultimate destination of a credit report but also encompasses the person who acquires it for another. *See, Davis*, at 507, citing *Hanson* 1220. Defendant, eBay is a "user" under the FCRA and are therefore liable for FCRA violations. The FCRA imposes civil liability upon users and consumer reporting agencies that willfully or negligently violate the statute. *See DiGianni* 26 F. 3d at 348.

The FACTA, including § 1681c(g), is part of a broader statutory scheme known as the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* The FCRA creates a private right of action through a provision that provides civil liability for negligent noncompliance. *See*, 15 U.S.C. § 1681(n); *see also, id.,* § 1681(o) (providing civil liability for negligent noncompliance, for consumers' actual damages); *Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057, 1059 (9th Cir. 2002) ("with these words Congress created a private right of action for consumers"). Thus, because Plaintiff and the putative class claim to be "consumers," they assert a claim arising under the FRCA and thus properly invoke this Court's subject matter jurisdiction. *See,* 28 U.S.C. § 1331; 15 U.S.C. § 1681p.

Defendant's blanket denial that it is not "a consumer reporting agency" is insufficient to defeat plaintiffs' claims. The complaint is to be liberally construed in favor of the plaintiff, and all facts pleaded must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). Defendants rely heavily on several cases to support their position, however, these cases can be distinguished and not all courts support defendants position. For example, in *Beaudry v. Telecheck Services, Inc.,* 579 F.3d 702, a consumer brought a class action under the FCRA against

companies which provided check verification services, alleging that the companies had violated the FCRA by failing to account for change in numbering systems which made it appear the consumer was a first-time check writer. The court found the companies which provide check verification services to be a consumer reporting agency holding that the FCRA, 15 U.S.C. § 1681 *et seq.,* places a number of restrictions on "consumer reporting agencies," meaning any individual or "other entity" who "regularly…assemble[es], or evaluates[es] consumer credit information…for the purposes of furnishing consumer reports to third parties." *Beaudry,* 579 F.3d, 702, 704, *citing* § 1681 a(b), (f).

Defendant's claim that the "Accessed Information" does not constitute a "consumer report" is also without merit.  As discussed hereinabove, plaintiff has alleged that in addition to customer's names, encrypted passwords, email addresses, physical addresses phone numbers and dates of birth, at least thirteen (13) other categories of personal information including, credit card and bank account numbers are collected by eBay and were also possibly compromised and stolen.  Compl. ¶ 18-19. Under the FCRA, a consumer report is "the communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for [credit, insurance, employment, or other authorized purposes]." *See,* § 1681a(d)(1). Under the 1996 amendments to the Act, Congress expanded the permissible uses of consumer report information to include credit and insurance target marketing, including firm offers of credit or insurance that are not initiated by the consumer. *See* § 1681b(c).

Plaintiff alleges eBay functions as a financial institution and offers financial and credit services through its eBay MasterCard, PayPal Buyer Credit, and PayPal Plus Credit Card. PayPal

(an eBay company) maintains an account for each user, and those accounts hold customer funds (U.S. Dollars). Compl. ¶¶ 98 – 100. eBay also is a "user" as it supplies information to credit agencies. Compl. ¶ 115. Plaintiff has properly alleged that eBay has "knowingly divulged" confidential information to third parties by failing to provide commercially reasonable security protocols. Compl. ¶¶ 118-119.

### K. *Gramm-Leach-Bliley Act (Count VII)*

The Gramm-Leach-Bliley Act (GLBA) was intended to protect private information tendered to financial institutions. "It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). The GLBA defines the protected information to include information exchanged during "any service performed for the consumer" or "otherwise obtained by the financial institution." 15 U.S.C. § 6809(4)(A); *see also*, *Dunmire v. Morgan Stanley, Inc.*, 475 F.3d 956 (8th Cir., 2007).

Plaintiff alleges eBay functions as a financial institution for GLBA purposes. eBay allegedly offers financial and credit services through its eBay MasterCard, PayPal Buyer Credit, and PayPal Plus Credit Card. PayPal (an eBay company) maintains an account for each user, and those accounts hold customer funds (U.S. Dollars). Compl. 98 – 100.

eBay is correct that, to date, courts have not recognized a private right action for GLBA violations. eBay's violation of this law shows a breach of its fiduciary duty, negligence, etc. In short, while eBay may not be called to task by federal regulators for its breach of these law, that same breach is evidence of the standard care eBay failed to meet, and a private right of action should be recognized by this Court.

## IV. CONCLUSION

Collin Green had his personal data stolen. The stolen information was provided to eBay, who contracted to keep it safe, in light of the great harm a breach of that data could cause. eBay failed to reasonably secure the data. Collin Green was not alone; he was one of 145,000,000 who suffered the same fate. This group is statistically certain to endure billions of dollars in damage if eBay is not forced to perform the intent of the contract – *i.e.*, protect the class members from the harm of their data being used for identity fraud.

Plaintiffs have alleged injury in fact pursuant to the Supreme Court cases of *Monsanto* (*supra*) and *Susan B. Anthony* (*supra*). There is an explicit and judicially recognized causal connection between the injuries and eBay's failure. A favorable ruling by the jury will, at a minimum, achieve what the contract intended.

eBay's motion to dismiss should be denied in whole.

_____
Eric J. O'Bell (La #26693)
Charles F. Zimmer, II (**T. A.**) (La. #26759)
***O'Bell Law Firm, L.L.C.***
3500 N. Hullen Street
Metairie, Louisiana 70002
Tel: (504) 456-8677
Fax: (504) 456-8653
czimmer@cfzii.com
ejo@OBellLawFirm.com
***Counsel for the Plaintiffs***

- 39 -

**Certificate of Service**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which notifies all counsel of record of the filing.

November 4, 2014.

                                 _____

Charles F. Zimmer, II (**T. A.**) (La. #26759)
***O'Bell Law Firm, L.L.C.***
3500 N. Hullen Street
Metairie, Louisiana 70002
Tel: (504) 456-8677
Fax: (504) 456-8653
czimmer@cfzii.com

- 40 -